## JOHN v. SMITH et al.

(Circuit Court, D. Oregon. February 4, 1899.)

No. 2,421.

1. PUBLIC CHARITABLE TRUSTS—VALIDITY—CERTAINTY AS TO PURPOSE.

A will devised the testator's real estate to his executors in trust, the rentals and proceeds when sold to be used "in establishing and maintaining free schools or school" in a town named. It provided that such schools should be public, and at all times open to children of the school district, which should embrace the town. It declared that it was the testator's intention to establish a permanent and perpetual educational fund, but not to direct the particular branches to be taught; and such matter, as well as the number, character, and cost of the buildings to be erected, was left to the judgment of the trustees. *Held*, that the objects and beneficiaries of the charity were specified with sufficient certainty to uphold the trust; the matters left to the discretion of the trustees being merely those of detail, relating to its execution, and which it was impracticable to provide for in the will.

2. LIMITATION OF ACTIONS—RECOVERY OF REAL ESTATE—ACTION AGAINST EXECUTOR.

Where an executor to whom real estate was devised in trust took possession of the same, and held it, claiming title under the will, for a length of time equal to that fixed by the state statute of limitations, an action for its recovery by an heir at law of the testator, based on the invalidity of the will, is barred.

3. JUDGMENTS—RES JUDICATA—CONSTRUCTION OF WILL.

Under the statutes of Oregon, courts of probate have jurisdiction to construe wills, and a construction of a will upholding its validity as to personal property in proceedings for its probate renders the question res judicata for all purposes.

This is an action by Benjamin F. John against Philip T. Smith, executor, and others, for the recovery of real estate. On demurrer to answer.

Watson & Beekman and W. W. Thayer, for plaintiff.

Catlin, Kollock & Catlin, H. B. Nicholas, and Edward N. Deady, for defendants.

BELLINGER, District Judge. On about the 27th day of May, 1886, James John died in Multnomah county, leaving a will, which, omitting formal parts, is as follows:

"First. I do hereby give, bequeath, and devise all money, property, and estate, real and personal, of every kind and nature, of which I may die seised or possessed, or be entitled to at the time of my death, and wheresoever situate or being, to my executors hereinafter named, to and for the following uses and trusts; that is to say: (1) To sell and convert all my personal property into cash, at private or public sale, as to them shall seem best. (2) To lease all my real estate, except that certain block hereinafter mentioned, upon such terms, and for such times, and in such parcels as they may deem to the best interest of my estate; but all leases shall terminate fifteen years after the date of my death. (3) After the payment of my funeral expenses, and the expenses of administration upon my estate, to expend all other moneys which shall come to their hands upon my death, from the sales of personal property or from rents of real estate, in the erection of buildings for school purposes upon block No. 29 in the town of St. Johns, Multnomah county, state of Oregon, and employing teachers to teach the common-school branches. (4) To sell all real estate fifteen years after

the date of my death, and not before, excepting said block 29, and such other lots and blocks as they may deem necessary for school buildings and grounds, at public or private sale, with or without an order of court, and upon such terms as they may deem advisable, and the proceeds arising from such sales to be delivered to trustees to be appointed as hereinafter provided. If such sales shall not be for cash, then the notes and securities shall be turned over to such trustees. (5) It is my intention that all taxes, claims, charges, and expenses shall be paid out of money coming into the hands of my executors from other sources than from sales of real estate, and that only the remainder shall be used by them in erecting school buildings and supporting schools. (6) The sales of real estate hereinbefore mentioned to be made by my executors shall be made within eighteen years after my death, and not until fifteen years after my death. (7) It is my desire that my estate shall be used in establishing and maintaining free schools or school in the town of St. Johns, and that such schools shall be public, and at all times open to children of the school district, which shall embrace the town of St. Johns; and, if my executors shall consider it to the best interests of the children of said town and district, they may act in concert with the directors of said school district in erecting school houses and maintaining schools, but any and all buildings erected with money belonging to my estate shall belong to my estate, and not to the district, and all moneys expended in maintaining schools shall be expended under the supervision of my executors as long as they shall continue to act, and until the trustees hereinafter mentioned and provided for shall be appointed and qualify.

"Second. I do hereby nominate and appoint my friends Philip T. Smith, of St. Johns, C. W. Burrage and P. A. Marquam, of Portland, executors of this, my last will and testament; and, in case either of them shall fail to accept the trust, I do hereby suggest my friend John Catlin to act as executor in the place of the one failing to accept.

"Third. It is my will that fifteen years after my death three trustees be appointed, as follows: One by the judge of the circuit court of the state of Oregon in whose judicial district the town of St. Johns may be in, one by the person who shall be district judge of the United States in whose judicial district the town of St. Johns may be in, and the third shall be appointed by the two persons acting as such judges; and the three persons appointed as such trustees shall be and constitute a board of trustees, and such board shall have the possession, management, and control of all moneys and property by them received from my executors, for the purpose of promoting educational interests in the town of St. Johns, and to that end shall use such money and property so as to establish a permanent fund, the interest only to be used in educational purposes, or so much thereof as shall be necessary. The principal to be loaned only upon real estate security. A portion of the principal, which shall be in excess of fifty thousand dollars, in the discretion of such trustees, may be used in erecting buildings for educational purposes, and in employing teachers.

"Fourth. The persons acting as judges aforesaid may from time to time make rules and regulations for the government of the board of trustees, which rules and regulations shall be binding upon such board; and they may fix the qualifications of such trustees, and determine whether or not they shall give security for the faithful performance of their trusts, and to whom such security shall be given.

"Fifth. It is not my intention to direct the particular branches of education which shall be taught, nor in any way limit the use of the money in promoting certain kinds of education; only I desire that it shall never be used to inculcate the doctrines of any religious sect or denomination, one more than the other.

"Sixth. It is my intention and desire to establish a permanent and perpetual educational fund, to be forever used in promoting education.

"Seventh. Whenever a vacancy shall occur in the board of trustees hereinbefore mentioned, such vacancy shall be filled by appointment to be made by the persons occupying the positions of judges as aforesaid. Said board to be always kept full, and to consist of three persons, a majority of whom may transact business."

On June 30th of the same year this will was admitted to probate in the county court of Multnomah county, and the defendant Philip T. Smith was appointed executor in the will, the other persons named therein having declined to act.     On November 14, 1891, Benjamin F. John, the plaintiff herein, instituted proceedings in the Multnomah county court to revoke the order of probate, and for a decree against the validity of the will, upon the ground of lack of capacity in the testator to make the will, and upon the further ground that the attempted devise to charitable uses created a perpetuity, and was so indefinite and uncertain in respect to the object of the trust, its beneficiaries, and the trustees to execute it, that a court of equity could not enforce it.     The first ground was abandoned at the hearing.     The county court upon the hearing denied the petition, and on appeal to the state circuit court the decree of the county court was affirmed. Thereupon the plaintiff took an appeal to the supreme court of the state (47 Pac. 341), where the decree of the circuit court was affirmed on December 21, 1896.     Plaintiff brings this action, as heir at law of James John, to recover possession of the real property devised in trust as aforesaid.     The defendant, in his answer, among other things, pleads the statute of limitations; alleging that he has been in exclusive, open, and notorious possession, adverse to plaintiff, of the property in question, for more than 10 years last past, and next preceding the commencement of this action.     Defendant then sets out the provisions of the will of James John, and claims title thereunder by virtue of the trust with which he is charged thereby; and he further pleads the adjudication had in the state courts in bar of the plaintiff's right to recover.     To all these answers the plaintiff demurs.

Plaintiff makes the same contention in this action that was made by him in the proceeding in the state court to revoke the will, except as to the want of testamentary capacity in the testator.     This contention is that the will is too indefinite and uncertain with reference to the object of the trust and the mode of carrying it out, its beneficiaries, and the trustees in the trust, to be effective.     It is contended that the will is so indefinite in these respects that it cannot be upheld.     The case of Pennoyer v. Wadhams, 20 Or. 274, 25 Pac. 720, is referred to as virtually sanctioning the same view; and the statement in the opinion, that "if a gift is made for a public, charitable purpose, it is immaterial that the cestuis que trustent are indefinite or uncertain, or that the trustee is uncertain or incapable of taking," is thought to have been inadvertently made.     The admittedly true rule is stated by the court to be that the trust will be enforced when the fund is given to a trustee competent to take, and the charitable use is so far defined as to be capable of being specifically executed.     It is contended by the plaintiff that to this rule should be added the qualification that the object of the trust and the beneficiaries must depend upon the will of the testator, and not upon that of other parties.     As to this it is clear that, if the will of the testator does not indicate the beneficiaries of his bounty, no other or substituted will can, and the charity must fail, as all charities must in like cases, not because of any want of prevision on the part of the testator, but because the nature of such charities does not admit of their execution.     The contention against this will

based upon the authority of the decisions of the supreme court, and upon consideration of the statutes of the state, is disposed of by the decision of the supreme court of the state in Re John's Will, 47 Pac. 341, where all the questions raised here were decided in a case involving this will in its disposition of personal property. It is needless to search through other cases to ascertain the opinion of the supreme court applicable in this case, when the precise case has been decided by that court; and so of the construction to be given to the statutes of the state applicable here. When the supreme court has construed those statutes in their relation to the precise case, there is no room for interpretation, and such construction is conclusive upon this court. So far as the supreme court of Oregon and the construction to be given the statutes of Oregon are concerned, the decision of the supreme court in support of the trust created by this will is conclusive; and the impeachment of this will, if made, must rest upon the authority of other courts, and upon considerations to which the state statutes do not apply.

This trust is not to charity generally. It is to a specific charity, for which a legal estate in the trustee is devised. The title to the real property was in terms devised to the executors named in the will, in trust for a specific object,—for the maintenance of a free school or schools in the town of St. Johns. There is nothing vague or uncertain in the trust. It is expressly declared in the will to be the intention of the testator that his estate "shall be used in establishing and maintaining free schools or school in the town of St. Johns, and that such schools shall be public, and at all times open to children of the school district which shall embrace the town of St. Johns." The only discretion permitted the trustees is that of acting in concert with the directors of the school district in erecting school houses and maintaining schools. The particular branches of learning to be taught are not specified, but it is provided that the fund shall never be used "to inculcate the doctrines of any religious sect or denomination, one more than the other." It is urged against this trust that the manner of disposing of the trust property, the amount to be retained for buildings, the character of the buildings to be erected, and the particular branches to be taught, etc., are not specified. But these several matters are not in any proper sense objects of the trust. They are matters of detail, depending upon conditions which could not be foreseen, and which it was not practicable to provide for at the time. The exercise of the powers conferred by the will is not the object of the trust, but a means of accomplishing it. There is no judgment but that of the testator as to the purpose of the trust,—the establishing of a free school for the children of the St. Johns school district, and the creation of a permanent fund to maintain it. There is no room for a substituted will as to these objects, which are as definite and certain as words can make them. If it was left to the judgment of the executors or trustees as to whether the testator's estate should be devoted to the public charity mentioned, or should be otherwise disposed of, the principle relied upon to defeat this will would apply. But the trust is clearly declared, and it is absolute. The will vested a present title in qualified executors, for a public charity clearly defined, and this is

sufficient. Courts will not tax their ingenuity to defeat wills, especially those which create public, charitable trusts. Such trusts are the favorites of equity. "The construction of all instruments where they are concerned is liberal in their behalf. Even the stern rule against perpetuities is relaxed for their benefit. It is a cardinal rule in the law of wills that courts shall do this [carry out the intention of the testator] whenever it can be done. Here we find no impediment in the way. The gift was immediate and absolute, and it is clear, beyond doubt, that the testator meant that no part of the property so given should ever go to his heirs at law, or be applied to any other object than that to which he had devoted it by the devise here in question." Ould v. Hospital, 95 U. S. 303. Such trusts "may, and indeed must, be for the benefit of an indefinite number of persons; for, if all the beneficiaries are personally designated, the trust lacks the essential element of indefiniteness, which is one of the characteristics of a legal charity. If the founder describes the general nature of the charitable trust, he may leave the details of its administration to be settled by trustees under the superintendence of a court of chancery; and an omission to name trustees, or the death or declination of the trustees named, will not defeat the trust, but the court will appoint new trustees in their stead." Russell v. Allen, 107 U. S. 163, 2 Sup. Ct. 327.

In addition to the foregoing considerations upon which this will must be upheld, I am of the opinion that the statute of limitations is a bar to this action. It is immaterial that the defendant is designated "executor." The material fact is that he holds adversely to the plaintiff. His holding for the past 10 years has been what it was at the commencement of this action. If it was adverse at the latter period, as alleged, it has been so during the 10 and more preceding years. The will under which the defendant holds was admitted to probate on the 30th of June, 1886. The title derived by the defendant under the will is not more hostile now than it was on that date. The plaintiff's right to recover depends upon his ability to impeach the validity of this will, and he in fact did attempt to impeach it by a proceeding in the state court of probate begun nearly 7 years before the commencement of this action. There is question as to whether the adjudication had in that proceeding is res adjudicata here; but it cannot be questioned that it was open to the plaintiff to have brought this action more than 10 years earlier than he did, and, not having done so, he is barred.

The decision in the state court already referred to is also relied upon as a defense here. The state court did not assume the power to construe wills in that form of proceeding, except in so far as they dispose of personalty. The will concerns both kinds of property, and, if the probate of the will had been revoked in the proceeding brought for that purpose, the adjudication would have been conclusive against defendant's right as to both the real and personal property disposed of by it. The will, to be available to the defendant in an action concerning either real or personal property, must have been probated; and, upon the principle of res adjudicata, the plaintiff should not be permitted to say that the judgment in the state court extends only to the disposition of personal property under the will, or, having taken

the opinion of the courts of one jurisdiction, and finding that opinion unfavorable to him, resort to a new jurisdiction for a retrial of the identical case already tried and determined.    The spectacle that would be presented by two decisions of identical questions involved in the same will, one for and the other against, one sustaining the will in the exercise of a power to control the disposition of personal property, and the other overthrowing it in the exercise of its jurisdiction to control the disposition of real estate, would be an unseemly one.    Such a result would tend to bring the administration of justice into deserved contempt.    In a case like this, if there is question as to the binding effect of the adjudication already had, the court ought at least to regard that adjudication as a precedent to be followed.    I am of the opinion that the state court of probate has, under the statute of this state, jurisdiction to construe this will for all purposes, and that the decree of that court in the construction of this will is a bar to this action.    The demurrer is overruled.